```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case No. |
| LIABILITY LITIGATION | * | 4:13-cv-434 (P. CARTER) |

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Phyllis Carter was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Carter brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Carter also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mrs. Carter's husband Donald brought a loss of consortium claim. Mentor contends that the Carters' claims are barred by the applicable statutes of limitation. For the reasons set forth below, the Court agrees, and Mentor's Motion for Summary Judgment (ECF No. 24 in 4:13-cv-434) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

                        FACTUAL BACKGROUND

Viewed in the light most favorable to the Carters, the record reveals the following.  The Carters live in South Carolina, and all of Mrs. Carter's medical treatment relevant to this action occurred in South Carolina.  In 2003, Mrs. Carter's doctor, Dr. Christian Magura, implanted ObTape in Mrs. Carter to treat her stress urinary incontinence.  Nearly a year after the implant surgery, Mrs. Carter began to experience sharp pain, vaginal bleading, and vaginal discharge.  Mrs. Carter visited Dr. Magura in December 2004, and he told her that she "had an erosion that needed to be fixed."  Mrs. Carter Dep. 75:3-8, ECF No. 24-4.  In January 2005, Dr. Magura performed a vaginoscopy that confirmed the erosion, and he told Mrs. Carter that her

symptoms were caused by an erosion of the ObTape. *Id.* at 76:2-22. Dr. Magura removed part of the ObTape.

Later in 2005, Mrs. Carter went back to Dr. Magura because she was still experiencing vaginal bleeding. Dr. Magura removed additional ObTape and told Mrs. Carter that he had taken out more of the sling. Mrs. Carter Dep. 93:18-22. Dr. Magura told Mrs. Carter that the procedure would likely "fix [her] problem." *Id.* at 93:23-94:1. But it did not fix her problem, so Mrs. Carter went to see another doctor, Dr. Michael Kennelly, in December of 2005. Dr. Kennelly told Mrs. Carter that a portion of the ObTape had not been removed and that it was causing some of her symptoms. *Id.* at 100:14-20. Dr. Kennelly recommended removal of the entire sling. *Id.* at 104:22-105:4. In January 2006, Mrs. Carter had a third procedure to remove ObTape.

While Mrs. Carter was experiencing complications with her ObTape, she found it painful to have sex. Mr. Carter believed that the couple's sexual difficulties were caused by the ObTape. Mr. Carter Dep. 47:13-18, ECF No. 24-7 (Q: "At any time when you were having the sexual complications, did you ever think that it might be related to the sling that she had implanted?" A: "After we found out that it was – parts of it was still in there and she had infection and all this that and the other, yes."); *id.* at 53:10-21 ("When she started having trouble, when she started bleeding and everything, and they told her they needed

to go in and she had to – they needed -- it had worked its way through her . . . pelvic area, and they needed to go in there and . . . get it out, and that's when we realized then that something . . . something wasn't right.").

The Carters filed their Complaint on September 17, 2013. *See generally* Compl., ECF No. 1 in 4:13-cv-434. Mrs. Carter brought claims for personal injury under a variety of theories, including strict liability failure to warn, strict liability defective manufacturing, breach of warranty, negligence, fraudulent concealment, constructive fraud, negligent misrepresentation, negligent infliction of emotional distress, gross negligence, unjust enrichment, and the South Carolina Unfair Trade Practices Act. Mr. Carter's claim is for loss of consortium.

## DISCUSSION

The Carters filed their action in this Court under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. The parties agree that South Carolina law, including its statutes of limitation, apply to the Carters' claims because the Carters are South Carolina

4

residents and all of Mrs. Carter's medical treatment relevant to this action occurred in South Carolina.

The parties agree that the Carters' claims are subject to a three-year statute of limitations. S.C. Code Ann. § 15-3-530(5) (requiring that actions for injury to the person be brought within three years after the claim accrues). That statute of limitations begins to run when a person "knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C. Code Ann. § 15-3-535. The only dispute here is when the Carters' claims arose.

Under South Carolina's discovery rule, "the statute of limitations begins to run from the date the claimant knew or should have known that, by the exercise of reasonable diligence, a cause of action exists." *Holmes v. Nat'l Serv. Indus., Inc.*, 717 S.E.2d 751, 753 (S.C. 2011); *accord* S.C. Code Ann. § 15-3-535. "The date on which discovery of the cause of action should have been made is an objective, rather than subjective, question." *Bayle v. S.C. Dep't of Transp.*, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001). "In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against

another party might exist." *Id.* (internal quotation marks omitted).

Where there is no conflicting evidence "as to whether a claimant knew or should have known he had a cause of action," the Court may resolve the issue as a matter of law. *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998); *accord McMaster v. Dewitt*, 767 S.E.2d 451, 456 (S.C. Ct. App. 2014). In *McMaster*, for example, the South Carolina Court of Appeals evaluated the claim of a plaintiff who was hospitalized with psychosis due to an over-prescription of the drug Adderoll. *McMaster*, 757 S.E.2d at 456. When the plaintiff was discharged from the hospital, he knew he had suffered from Adderall-induced psychosis. He also knew which doctor prescribed him Adderall. The South Carolina Court of Appeals determined that these facts were sufficient to put the plaintiff on notice of a potential malpractice claim against his doctor. *Id.*; *see Barnes v. Schering Corp.*, 16 F.3d 408, No. 93-1638, 1994 WL 20110, at *2 (4th Cir. Jan. 26, 1994) (per curiam) (applying South Carolina law and concluding that the plaintiff's discussion with her doctor put the plaintiff on notice that her injuries were connected to the drug diethylstilbestrol); *see also Bayle*, 542 S.E.2d at 741 (finding that the plaintiff's negligence cause of action against the transportation department accrued shortly after his wife's fatal car accident because he knew that his

6

wife lost control of her car when she drove into a pool of water on the expressway and was therefore on notice that the accident was potentially caused by the transportation department's negligence); *Young v. S.C. Dep't of Corr.*, 511 S.E.2d 413, 416 (S.C. Ct. App. 1999) (finding that an inmate should have been aware that prison officials' delay in obtaining medical treatment may have exacerbated his symptoms when two separate doctors expressed concern about the delay).

The Carters assert that they did not know ObTape might be defective until 2012, when Mrs. Carter saw an advertisement regarding problems with mesh slings. The Carters argue that their claims against Mentor did not accrue until they knew of their injuries, knew the injuries were caused by ObTape, *and* knew that ObTape might be defective. The Carters, however, pointed the Court to no South Carolina authority that supports such a rule. Rather, the cases interpreting South Carolina law establish that a plaintiff's product liability cause of action accrues when the plaintiff has information sufficient to place her on notice of the possibility that her injury was caused by a certain product. *E.g., Barnes*, 1994 WL 20110, at *2.

Here, Mrs. Carter knew in January 2005 that her symptoms were caused by an erosion of the ObTape. And by December 2005, Mrs. Carter's new doctor recommended removing the entire sling to alleviate Mrs. Carter's symptoms. While Mrs. Carter was

7

experiencing complications with ObTape, Mr. Carter connected his wife's symptoms (and his loss of consortium) to the sling. Therefore, by December 2005, a person of common knowledge and experience in the Carters' position would have been on notice that their injuries may be related to ObTape. They would have been able to begin an investigation to determine whether those injuries were caused by a problem with ObTape, a problem with the implantation surgery, or some other problem.

Mrs. Carter contends that her doctors never told her that there was a defect in ObTape. Rather, they told her that she was having a foreign body response to the sling. Mrs. Carter assumed that her symptoms were due to a problem with her body that caused her to reject the sling, and she emphasizes that Dr. Magura did not initially know whether that foreign body response was caused by a problem with ObTape. But by the third excision surgery, when Mrs. Carter had to visit a specialist and was informed that the entire sling needed to be removed, a person of common knowledge and experience in Mrs. Carter's position would have been on notice that her injuries were caused by ObTape and should have investigated whether her injuries were caused by a problem with ObTape or some other problem.

For these reasons, the Court finds that no genuine fact dispute exists on when the Carters' claims accrued. Their claims accrued by December of 2005. The Carters did not file

their Complaint until September 17, 2013—nearly eight years after their claims accrued. Therefore, the Carters' claims are barred by the applicable statutes of limitation, and Mentor is entitled to summary judgment on their claims.

## CONCLUSION

As discussed above, Mentor's Motion for Summary Judgment (ECF No. 24 in 4:13-cv-434) is granted.

IT IS SO ORDERED, this sixteenth day of September, 2015.

s/Clay D. Land<br>
CLAY D. LAND<br>
CHIEF U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA